FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHEYENNE C.,[1]

Plaintiff,

v.

FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-CV-03046-MKD

ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER

**ECF Nos. 8, 10**

Before the Court are the parties' briefs. ECF Nos. 8, 10. D. James Tree represents Plaintiff. Special Assistant United States Attorney Benjamin Groebner represents Defendant. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court reverses the Commissioner's decision and remands the case for the immediate

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

calculation and award of benefits.

## JURISDICTION

Plaintiff was found disabled as a child beginning May 11, 2011. Tr. 139-43. Following a continuing disability review, the agency determined that Plaintiff's disability ended on June 1, 2015, and an Administrative Law Judge ("ALJ") upheld that determination on July 31, 2018. Tr. 21-36. On November 13, 2020, this Court remanded the matter for further administrative proceedings. Tr. 1724-42. On January 26, 2022, the ALJ issued a partially favorable decision finding that Plaintiff's disability continued through March 2, 2021, but that Plaintiff was not disabled under the rules applicable to adults beginning March 3, 2021, when she attained age 18. Tr. 1758-77. On February 21, 2023, the Appeals Council affirmed the finding that Plaintiff's disability did not end before March 3, 2021, but vacated the decision concerning the period beginning March 3, 2021, and remanded for further proceedings. Tr. 1780-82. The ALJ issued another unfavorable decision on December 13, 2024, Tr. 1791-1806, which the Appeals Council again vacated and remanded on April 3, 2025, Tr. 1821-23. Following another hearing, the ALJ issued an unfavorable decision on December 17, 2025, finding Plaintiff was not disabled beginning March 3, 2021. Tr. 1560-89. The Appeals Council did not assume jurisdiction, and the ALJ's decision became the final decision of the Commissioner after remand. *See* 20 C.F.R. § 416.1484(d).

Plaintiff appealed this final decision on March 14, 2026. ECF No. 1.

The Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted). "Substantial evidence" means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation marks and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation marks and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012),

*superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* (citation omitted). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Section 1614(a)(3)(H) of the Social Security Act requires the Commissioner to redetermine the eligibility of an individual who was receiving supplemental

security income as a child when the individual attains age 18. 42 U.S.C. 1382c(a)(3)(H). In conducting an age-18 redetermination, the Commissioner applies the rules governing adults who file new applications for benefits, rather than the rules governing continuing disability reviews. 20 C.F.R. § 416.987(b). The Commissioner therefore applies the adult five-step sequential evaluation process, except that the first step concerning substantial gainful activity does not apply. *Id.*

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits. *Id.*

If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

As a threshold matter, the ALJ found Plaintiff attained age 18 on March 3, 2021, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. Tr. 1566.

At step two, the ALJ found that Plaintiff has the following severe impairments: borderline intellectual functioning; depression; anxiety disorder; and learning disorder. Tr. 1566.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 1566.

The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels the following non-exertional limitations: Plaintiff claimant can understand, remember, and carry out simple instructions and make simple. Plaintiff can respond appropriately to occasional changes in the work setting. Plaintiff can have occasional interaction with supervisors, coworkers, and

the public. Plaintiff can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. Tr. 1567.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 1573. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, to include laundry worker, industrial sweeper, and industrial cleaner. Tr. 1574. Therefore, the ALJ concluded Plaintiff's disability ended on March 3, 2021, and Plaintiff has not been disabled since that date. Tr. 1575.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly assessed Plaintiff's testimony; and
2. Whether the ALJ properly assessed the medical opinion evidence.

ECF No. 8 at 2.

## DISCUSSION

### A. Plaintiff's Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 8 at 4-11. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and footnote omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing standard is the most demanding required in

Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 1568.

First, the ALJ discounted Plaintiff's testimony as inconsistent with what the

ALJ characterized as mostly normal mental status examinations. Tr. 1568-69. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ did not identify a meaningful contradiction here. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). The ALJ relied on observations that Plaintiff had intact memory, fair attention, and "good" or "okay" mood during appointments. Tr. 1568-69. Those observations concern Plaintiff's cognitive functioning and presentation during isolated encounters, not her ability to manage anxiety and panic when exposed to unfamiliar people or workplace demands. *Cf. Ferguson*, 95 F.4th at 1200 ("The ALJ did not explain, and we do not see, how the absence of neurological defects and a normal mood during a medical exam are inconsistent with Ferguson's testimony about the severity and frequency of his headaches."). As the Ninth Circuit recently explained, a person may think clearly, remember well, and concentrate during an isolated examination while remaining unable to function in a workplace eight hours per day, five days per week. *See Ortiz v. Bisignano*, 179 F.4th 691, 703 (9th Cir. 2026). Likewise, evidence of normal memory and concentration does not discredit testimony concerning anxiety and other distinct mental health symptoms. *Id.* at 706.

Moreover, the examinations were not uniformly normal in the respects relevant to Plaintiff's testimony. As the Appeals Council previously observed,

many of the cited examinations also documented anxiety, panic attacks, agitation, emotionality, stress, negative fixations, decreased judgment and insight, and possibly tangential thought processes. Tr. 1822. The ALJ acknowledged many of these findings but reasoned that, "regardless of the claimant's emotional state," her mental status examinations remained mostly normal. Tr. 1569. This reasoning does not explain how the normal portions of the examinations contradicted Plaintiff's testimony concerning anxiety and panic. The ALJ impermissibly discounted the alleged symptoms because they were not consistently reflected in other areas of mental functioning. *See Ortiz*, 179 F.4th at 706.

The ALJ also reasoned that Plaintiff "has had many counseling appointments and healthcare appointments, but there is no indication of her having an anxiety attack at each visit or having just had one." Tr. 1569. However, Plaintiff did not allege that she remained in a continuous panic attack throughout every day. She testified that her panic was triggered by being in public without a familiar person and attempting to work around unfamiliar people. Tr. 1627; *see also* Tr. 3160 (reporting to healthcare provider that attempting to work would trigger panic). A healthcare appointment did not necessarily expose Plaintiff to either circumstance. The absence of a panic attack during a particular appointment therefore does not contradict Plaintiff's testimony concerning panic under different conditions. On this record, the ALJ's reliance on the mental status examinations

was not a clear and convincing reason for discounting Plaintiff's testimony.

Second, the ALJ discounted Plaintiff's testimony based on her activities, including visiting Tacoma and Seattle, planning a vacation to Louisiana, camping, attending an Easter gathering, boating, helping with storage, caring for children and a puppy, cooking, and storing photographs on a computer. Tr. 1570. An ALJ may reject a plaintiff's symptom testimony based on daily activities if the activities either contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Neither basis is satisfied here. Plaintiff traveled to Tacoma with her mother, Tr. 2729, and visited Seattle with her siblings, Tr. 2742. These outings are consistent with Plaintiff's testimony that she could be in public when accompanied by someone she knew. Tr. 1627. The cited Louisiana record referred only to a planned vacation. Tr. 2746. When Plaintiff attended an Easter gathering with unfamiliar people, she remained near her partner, experienced panic, and was exhausted afterward. Tr. 2738. Rather than contradicting Plaintiff's testimony, the treatment note corroborates her account of needing a familiar person present when she is around others.

Plaintiff's childcare and household activities also do not establish that she could sustain competitive employment. Plaintiff testified that her partner took over childcare approximately every other day when Plaintiff became unable to function

and cried for most of the day. Tr. 1670. The ALJ did not identify the frequency, duration, demands, or assistance involved in Plaintiff's remaining activities. Nor did the ALJ explain how occasional cooking, boating, computer use, or helping with storage demonstrated that Plaintiff could maintain regular attendance and productivity throughout a full workweek. *See Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (ALJ erred by failing to explain why the plaintiff's activities demonstrated an ability to maintain regular attendance at work). Activities that have no bearing on the functional limitation at issue do not create a genuine conflict. *Ortiz*, 179 F.4th at 703-04; *see also Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting the mere performance of ordinary activities does not detract from a plaintiff's testimony concerning her overall disability); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Defendant defends the ALJ's reliance on Plaintiff's mental status examinations and activities, ECF No. 10 at 2-5, but does not respond to Plaintiff's

challenges to ALJ's remaining rationales. The Court therefore treats those rationales as conceded.

The ALJ accordingly erred by failing to provide clear and convincing reasons for discounting Plaintiff's testimony.

**B. Medical Opinion Evidence**

Because Plaintiff filed her application before March 27, 2017, the ALJ was required to generally give a treating doctor's opinion greater weight than an examining doctor's opinion, and an examining doctor's opinion greater weight than a non-examining doctor's opinion. *Garrison*, 759 F.3d at 1012. The ALJ may only reject the contradicted opinion of a treating or examining doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The evidence identified by the ALJ, however, must actually conflict with the limitation being rejected. *Ortiz*, 179 F.4th at 703-04.

Plaintiff argues the ALJ improperly assessed two medical opinions. ECF No. 8 at 12-19.

*1. Dr. Bradford*

Dr. Bradford testified as a medical expert at the January 2022 hearing. He

opined that Plaintiff could perform simple, routine tasks, occasionally interact with the public, frequently interact with coworkers, and interact with supervisors without limitation. Tr. 1601-02. Asked on a more-probable-than-not basis whether flareups or bad anxiety days would cause Plaintiff to miss work, Dr. Bradford answered, "Yes, that would definitely be an issue." Tr. 1603. When asked about the cumulative effect of Plaintiff's attention and anxiety limitations, Dr. Bradford testified that Plaintiff "could be off task a third of the time." Tr. 1603.

The ALJ gave no weight to Dr. Bradford's opinions concerning off-task behavior and absenteeism. Tr. 1571. The ALJ characterized those limitations as an outlier that was inconsistent with Plaintiff's largely normal mental status examinations and activities such as attending appointments, addressing family matters, using a computer, and traveling. Tr. 1571. The ALJ reasoned that these activities demonstrated Plaintiff could remain on task while performing simple work. Tr. 1571.

Substantial evidence does not support this analysis. As discussed above, observations of intact memory, fair attention, and appropriate behavior during isolated appointments do not contradict an inability to remain productive throughout a normal workday and workweek. *Ortiz*, 179 F.4th at 703. Nor do Plaintiff's travel, attendance at healthcare appointments, computer use, and

supported family activities have a meaningful bearing on her ability to remain on task for eight hours per day, five days per week. *Id.* at 703-04.

The Appeals Council had already found substantially similar reasoning unsupported. It observed that Plaintiff received assistance with childcare and household chores and that the prior decision had not adequately explained how her activities, as actually performed, undermined Dr. Bradford's one-third off-task opinion. Tr. 1821-22. Nevertheless, the ALJ again relied on substantially the same mental status findings and activities without explaining how they conflicted with the specific limitation Dr. Bradford assessed. The ALJ also cited Dr. Malancharuvil's contrary opinion. Tr. 1571. But the ALJ credited that opinion based on the same largely normal mental status findings, as discussed above. Tr. 1572. Because those findings do not conflict with Dr. Bradford's off-task limitation, they do not explain why the ALJ credited Dr. Malancharuvil's opinion over Dr. Bradford's.

Defendant argues the ALJ satisfied *Sousa* by referring to specific portions of the record. ECF No. 10 at 6-7. But *Sousa* does not permit an ALJ to reject a non-examining opinion merely by listing evidence that does not actually contradict the assessed limitation. The ALJ did not identify a genuine inconsistency between Dr. Bradford's opinion concerning sustained productivity and Plaintiff's functioning during isolated appointments or daily activities.

The ALJ therefore erred in rejecting Dr. Bradford's opinion that Plaintiff could be off task for one-third of the workday. That limitation exceeds the vocational expert's testimony that a regular productivity reduction of 15 to 20 percent would preclude competitive employment. Tr. 1614. Because the ALJ's error concerning this limitation is sufficient for performing the credit-as-true analysis, the Court need not resolve Plaintiff's additional arguments concerning Dr. Bradford's unquantified absenteeism testimony.

*2. LMHC Olson*

Plaintiff also argues the ALJ erred in evaluating the opinion of treating counselor Corrinne Olson, LMHC. ECF No. 8 at 15-19. The Court need not determine whether the ALJ properly assessed Ms. Olson's opinion because the Court's determinations regarding Plaintiff's testimony and Dr. Bradford's opinion are sufficient to perform the credit-as-true analysis.

**C. Scope of Remand**

When the ALJ commits legal error in denying a claim for benefits, as here, the Court "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The Social Security Act, however, grants district courts flexibility in certain circumstances to reverse the ALJ's decision and remand for an immediate award of benefits rather than further administrative proceedings. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Plaintiff seeks such a remedy. ECF No. 8 at 20. Defendant responds that Plaintiff has not established the rare circumstances warranting an award of benefits but fails to meaningfully identify any outstanding factual issue or evidence that casts doubt as to disability. ECF No. 10 at 9.

Remand for an immediate award of benefits is allowed only when three requirements (collectively referred to as the "credit-as-true" rule) are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether that evidence is claimant testimony or a medical opinion; (2) there are no outstanding issues that must be resolved before a disability determination can be made, the record is fully developed, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the record as a whole would require the ALJ to find the claimant disabled on remand. *Leon*, 880 F.3d at 1045; *Garrison*, 759 F.3d at 1020. Even if all three requirements are met, the decision whether to remand a case for further proceedings or simply award benefits is in the Court's discretion. *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). The Court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

All three steps of the credit-as-true rule are satisfied here. First, as discussed

above, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony and Dr. Bradford's opinion.

Second, the record is fully developed, and further proceedings would serve no useful purpose. The issue of Plaintiff's disability under the adult standard has been before the agency since March 2021. The agency has issued three decisions denying disability under the adult standard, in January 2022, December 2024, and December 2025. The Appeals Council twice remanded the adult disability determination. The administrative record—exceeding 3,100 pages—includes multiple hearings, testimony from medical experts and vocational experts, and extensive longitudinal treatment records. Notably, the Appeals Council's April 2025 order expressly identified the inadequate evaluation of the same evidence at issue here. The Appeals Council explained that Plaintiff's supported childcare and household activities did not adequately undermine Dr. Bradford's off-task opinion and that the ALJ's reliance on normal portions of mental status examinations failed to account for observations of anxiety, panic, agitation, emotionality, stress, decreased judgment and insight, and potentially tangential thinking. Tr. 1821-22. The current decision again relied on largely normal mental status examinations and substantially the same activities to reject Plaintiff's testimony and Dr. Bradford's opinion. Tr. 1568-71.

*Ortiz* strongly supports an award of benefits in these circumstances. There,

the Ninth Circuit found a record exceeding 2,500 pages, three hearing transcripts, and repeated administrative errors sufficiently complete to permit an immediate award. *Ortiz*, 179 F.4th at 706. By contrast, the record here is even larger, and the challenged errors recurred after the Appeals Council specifically identified the deficiencies requiring correction. The Ninth Circuit has emphasized that precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan [to revisit the medical opinions and testimony that were improperly rejected] qualifies as a remand for a 'useful purpose' under the ... credit-as-true analysis." *Garrison*, 759 F.3d at 1021-22 (citations omitted); *see also Knorr v. Berryhill*, 254 F. Supp. 3d 1196, 1220 (C.D. Cal. 2017) ("[R]emanding for the ALJ to reconsider this evidence, which the ALJ already had an opportunity to review, would simply be allowing the ALJ to have a second bite at the apple."). The record does not require further proceedings.

Third, crediting the improperly rejected evidence would require the Commissioner to find Plaintiff disabled. Dr. Bradford estimated that the cumulative effect of Plaintiff's limitations could leave her off task for one-third of the workday. Tr. 1603. Although Dr. Bradford used the word "could," both the ALJ and Appeals Council treated this estimate as an assessed limitation. Tr. 1570-71, 1821-22. If credited, Dr. Bradford's one-third off-task limitation would require a finding of disability because the vocational expert testified that a regular

productivity reduction of 15 to 20 percent would preclude competitive employment. Tr. 1614. Plaintiff's credited testimony independently requires the same conclusion. Plaintiff testified that she experiences approximately three bad days per week during which she accomplishes nothing, that her partner regularly must take over childcare when Plaintiff cannot function, and that anxiety caused her to miss work and prevented her from completing simple stocking tasks at Walmart. Tr. 1629-31, 1668-70. Those limitations exceed the vocational expert's tolerances for off-task behavior and absence. Tr. 1614.

Finally, the record does not create serious doubt that Plaintiff is disabled. Plaintiff has borderline intellectual functioning, including an IQ score of 75. Tr. 1598. Her treatment records documented anxiety, panic attacks, agitation, emotionality, stress, decreased judgment and insight, and potentially tangential thinking. Tr. 1822. Her credited testimony is also consistent with her unsuccessful attempt to perform simple stocking work during the relevant period. Plaintiff's anxiety caused missed work, daily crying, and an inability to complete assigned tasks, after which Walmart asked her to leave. Tr. 1628, 1630-31, 1668-70. A brief, unsuccessful work attempt attributable to Plaintiff's impairments supports her allegations. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007). The agency has already had multiple opportunities to assess this evidence, and the current decision again relied on substantially similar reasoning the Appeals

Council had found supported. The adult redetermination has now been pending for more than five years. The credit-as-true rule is a "prophylactic measure" designed to motivate Defendant to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100. The repeated errors and resulting delay counsel against further administrative proceedings. *See Ortiz*, 179 F.4th at 706 ("Two reviewing courts have already found errors in the handling of his application for benefits, and some of those errors have recurred in this latest denial of benefits. We decline to invite further repetition of this already unfortunate administrative history.").

Because the record is fully developed, crediting Dr. Bradford's opinion and Plaintiff's testimony requires a finding of disability, and the record creates no serious doubt that Plaintiff is disabled, the Court exercises its discretion to remand this matter for an immediate calculation and award of benefits beginning March 3, 2021.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 8**, is **GRANTED**.

2. Defendant's Brief, **ECF No. 10**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 20, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE